**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**DANIEL TODD GUNN,**

      **Plaintiff,**

                              **Case No. 3:18-cv-10886**
    **v.**                            **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Daniel Todd Gunn for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On November 5, 2014, Plaintiff filed an application for benefits, alleging that he has been disabled since April 16, 2013. R. 180–86. Plaintiff's application was denied, R. 151–54, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 155–56.[1] Administrative Law Judge Timothy Wing ("ALJ") held a hearing on March 16, 2017, at which

---

[1] The record does not contain a reconsideration determination.

Plaintiff, who was represented by counsel different from the attorney appearing in this action, appeared and testified, as did a vocational expert. R. 94−141. In a decision dated May 24, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from April 16, 2013, Plaintiff's alleged disability onset date, through June 30, 2013, the date on which Plaintiff was last insured. R. 22−32. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 10, 2018. R. 1−8. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 22. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.** **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*

at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")

and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not

disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,

age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 48 years old on the date on which he was last insured for disability insurance benefits. R. 30.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 16, 2013, his alleged disability onset date, and June 30, 2013, his date last insured. R. 24.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical, thoracic, and lumbar disorders, including degenerative disc disease, spondylosis, thoracic degenerative changes with kyphosis, and right knee disorder, including arthritis, chondromalacia patella. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 24–25.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work except that he is limited to occupations that could be performed using a cane for ambulation and subject to various additional limitations. R. 25–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a brick layer. R. 30.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 150,000 jobs as a system monitor; approximately 100,000 jobs as an inspector; approximately 250,000 jobs as a bench assembler—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and this RFC. R. 31. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any

time from April 16, 2013, his alleged disability onset date, through June 30, 2013, the date on which he was last insured. R. 32.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 24. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 25.

## IV.   DISCUSSION

### A.   Step Five

At step four of the sequential evaluation, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CPR 404.1567(a) except the claimant is limited to occupations *that could be performed with using a cane for ambulation*. The claimant is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching and climbing on ramps and stairs. The claimant must avoid occupations that require climbing on ladders, ropes and scaffolds or crawling. The claimant is limited to occupations that require no more than occasional pushing and pulling with the lower extremities. The claimant would need *the option to sit and stand during the workday for brief periods of a few minutes every half hour or so*.

R. 25 (emphasis added). At step five, and relying on the testimony of the vocational expert, the ALJ found that this RFC would not preclude the performance by Plaintiff of substantial gainful employment.

8

Plaintiff argues that the Commissioner failed to carry his burden of proof at step five of the sequential evaluation. *Plaintiff's Moving Brief*, ECF No. 24, pp. 11–24. Plaintiff specifically argues that the vocational expert's testimony regarding jobs that permit the changing of position and the use of a cane was inconsistent with the Dictionary of Occupational Titles ("DOT")[3] and, contrary to the ALJ's characterization, was not based on the vocational expert's experience. *Id*. at 14–20. Plaintiff also complains that the ALJ improperly failed to clarify for the vocational expert the frequency and length of time of the sit/stand option that Plaintiff's RFC would require. *Id*. at 19–23. This Court disagrees.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 404.1560(b)(2). "As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "To ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Id.* (quoting SSR 00-4p at *1). "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Id.*

---

[3] The DOT is a "publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy," and which ALJs generally consult to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

9

(quoting *Burns*, 312 F.3d at 127). "An ALJ's failure to comply with these requirements may warrant remand in a particular case[,]" but "the presence of inconsistencies does not mandate remand," so long as "'substantial evidence exists in other portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005)).

However, a vocational expert may rely on his or her own experience in addition to the DOT when determining whether an individual is capable of performing any work. *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v. Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that Judges in the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than solely on the DOT").

Here, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 132−33. The vocational expert testified that such an individual could perform such jobs as system monitor, inspector, and bench assembler. R. 132−34. When the ALJ questioned whether this testimony was consistent with the DOT, the vocational expert responded as follows:

> It is, your honor, except for my opinion based upon the changing of positions, and the use of a cane, and I base that on evaluating the representative examples provided in hypothetical number one, your honor within the economy, sir.

R. 134. Plaintiff's former counsel then questioned the vocational expert about the types of chairs that this hypothetical worker would require:

> Q For the sitting that was involved with the positions that you've identified would they be -- what kind of chairs would that person be provided?

10

A Well, they would vary depending on the employer, of course, but usually, like for instance, the system monitor position is usually regular chair with a back. Okay, you know, usually it's an office-type chair are the ones I've evaluated in the past. Inspector, bench assembler positions, they do vary. It's usually like a, a chair that's more higher in height sometimes.

Q You mean more like a stool?

A It could be at times, or it could be a chair such as these depending on the height of the work area.

Q So, it could be an armless chair?

A It could be, yes.

Q And, that would be the same with the other position as well?

A Yes, that's true.

Q And none of the positions would provide a recliner am I correct?

A Yes, that's correct.

R. 135–36.

The ALJ found at step five that the vocational expert's testimony was consistent with the DOT with the exception of the required sit/stand option and use of a cane. As to those aspects of Plaintiff's RFC, the ALJ found that the vocational expert's testimony was based on his own experience:

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) with the exception of the testimony provided regarding the sit stand option and the use of a cane. The vocational expert testified the jobs noted above could be performed either sitting or standing and with needing to use a cane for ambulation. *The vocational expert testified information provided in considering the sit stand option and use of a cane was based upon* [his] *experience in reviewing these types of positions. More specifically, these limitations are not inconsistent with the DOT, but are simply not contemplated by the publication.* Nevertheless, in considering these limitations, the vocational expert testified there were jobs available in the numbers discussed above.

R. 31 (emphasis added). Because Plaintiff could perform jobs that exist in significant numbers in the national economy, the ALJ went on to conclude that Plaintiff was not disabled. R. 31–32.

In challenging the ALJ's findings at step five, Plaintiff first contends that the ALJ mischaracterized the vocational expert's testimony regarding the sit/stand option and use of a cane as based on his experience because the vocational expert claimed no specific experience in this regard. According to Plaintiff, the vocational expert "didn't seem to know very much about any of the jobs and had clearly never seen them performed and done any study regarding how they were performed." *Plaintiff's Moving Brief*, ECF No. 24, pp. 14–20. To the contrary, the ALJ's construction of the vocational expert's testimony regarding the DOT and jobs that permit the changing of position and the use of a cane as based on the vocational expert's own experience was reasonable and reflects a fair reading of that testimony. *Compare* R. 31 *with* R. 134. Accordingly, to the extent that the vocational expert's testimony was inconsistent with the DOT, the vocational expert sufficiently resolved any such conflict by explaining his evaluation of the representative occupations, which reasonably invoked his own experience. R. 134; *see also Horodenski*, 215 F. App'x at 189–90; *Butler*, 2015 WL 570167, at *9; *Knight v. Colvin*, No. CV 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) ("The ALJ's reliance on this [vocational expert testimonial] evidence was reasonable, especially in light of the fact that the DOT provides the maximum requirements for occupations as generally performed, not the requirements for a specific job in a specific setting. A VE can provide more specific information about a specific job, which is precisely what happened here.").

Moreover, the Court rejects Plaintiff's assertion that the vocational expert's testimony regarding the types of chairs used in the three representative occupations reflects the expert's lack of familiarity with these occupations and undermines the finding that the vocational expert

12

properly relied on his own experience. *Plaintiff's Moving Brief*, ECF No. 24, pp. 15–16. The Court agrees with the Commissioner that the vocational expert's inability to describe the precise chair used by every employer at each job site does not undermine the vocational expert's testimony, as Plaintiff would have this Court find. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 25, pp. 7–8. Rather, the vocational expert's testimony reasonably reflects that the conditions and equipment provided at a particular work site will vary with each employer and that this variation prevented the vocational expert from providing a more definitive response about the particular type of furniture used for each job identified by him. *Id.*

As noted, the ALJ found that Plaintiff would need "the option to sit and stand during the workday for brief periods of a few minutes every half hour or so." R. 25 Plaintiff complains that this finding failed to clearly define the parameters of the sit/stand option, and that the ALJ thereby failed to clarify the frequency and length of time for this option in contravention of SSR 96-9p. *Plaintiff's Moving Brief*, ECF No. 24, pp. 19–23. This Court disagrees. The plain meaning of the phrase "a few minutes every half hour or so" is, in the view of this Court, sufficiently precise to permit the vocational expert to offer his expert opinion without further clarification. *Cf. Robinson v. Astrue*, No. CIV.A. 07-1825, 2008 WL 5046337, at *6 (D.N.J. Nov. 21, 2008) (deferring to the "plain meaning" of a doctor's use of the phrase "at this time" and not construing it to mean the entire treatment period).

Finally, this Court notes that Plaintiff's counsel did not object at the hearing to either the vocational expert's qualifications or to his testimony regarding the required sit/stand option and use of a cane. *See generally* R. 131–140; *cf. Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in

relying on the VE's testimony.") (citations omitted). For all these reasons, the ALJ reasonably relied on the vocational expert's testimony when finding at step five that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

### B.     Treating Physicians

Plaintiff next contends that the ALJ erred in discounting the opinions of his treating physicians, including his primary care physicians Gregory J. Salko, M.D. and Anthony Frisoli, M.D., arguing that remand is required because the ALJ impermissibly crafted the RFC without any supporting treating opinions. *Plaintiff's Moving Brief*, ECF No. 24, pp. 24−34. Plaintiff's argument is not well taken.

"'A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from

medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted).

In deciding what weight to accord the opinion of a treating physician, an ALJ must consider the following factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6); *see also* SSR 96-2p.[4] Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). Finally,

---

[4] The Social Security Administration has amended the regulations addressing the evaluation of medical evidence, *see*, *e.g.*, 20 C.F.R. § 404.1527 (providing that the rules in this section apply only to claims filed before March 27, 2017), and SSR 96-2p was rescinded. Plaintiff filed his claim on November 5, 2014.

"'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]'" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011)).

Here, the ALJ specifically considered the opinions of Dr. Salko and Dr. Frisoli, but assigned these opinions, which were issued before and after the relevant period respectively, little weight:

> As for the opinion evidence, the record contains medical source statements before and after the relevant period. Dr. Salko, the claimant's primary care doctor, completed medical source statements on January 19, 2012 and February 2, 2012 that limited the claimant to less than full time work at an extremely reduced range of sedentary exertion (Exhibit B1F). These assessments include limitations of no lifting of any weight or less than ten only on occasion, zero minutes of walking, two minutes of standing and ten minutes of sitting in an eight-hour workday and absolutely no use of the hands and feet. Initially, the undersigned notes that the weight of these opinions on their face is reduced because the extreme level of limitation opined by Dr. Salko is more consistent with an individual that is unable to live without skilled care, when in fact during this time, the claimant stated he was living with his son and girlfriend, who was ill and he aided in her care. The claimant also testified to being able to mow a small lawn during this time with breaks. Further, this opinion, although from a treating source, is inconsistent with other substantial evidence of record, including the MRI findings showing no nerve compression and the clinical examination findings of an orthopedic doctor, who found negative straight leg raise testing, normal and equal deep tendon reflexes in the lower extremities, full motor strength bilaterally and intact motor and sensory findings (Exhibit B2F). As such, it appears that the level of limitation in these opinions is largely influenced by the claimant's subjective reports rather than by the objective findings.
>
> Dr. Frisoli completed a physical residual functional capacity on March 13, 2017 and indicated the claimant could only sit for five minutes at a time and stand for five minutes at a time, sit for less than two hours in an eight-hour workday and stand/walk for less than two hours in an eight-hour workday. Dr. Frisoli also opined the claimant could not lift any weight whatsoever. The assessment of Dr. Frisoli indicates the claimant could not sustain full time work at a significantly reduced sedentary level (Exhibit B11F). This treating source opinion is also given little weight as it relates to the relevant period. Initially, this opinion is approximately four years after the relevant period and from a primary doctor who the claimant did not start treating with until October 2016. In addition, the opinion is not consistent with the clinical findings in Dr. Frisoli's own treatment records. In this regard, physical examination findings from Dr. Frisoli's records from November 14, 2016

16

> indicate that at his annual physical examination, the claimant had normal range of
> motion in the bilateral shoulders, hips and knees, normal strength and reflexes,
> normal gait and no sensory deficits (Exhibit B10F, Pg. 29). In sum, there is no
> objective evidence in this opinion to relate limitations to the relevant period.

R. 30. The Court finds no error with the ALJ's decision to assign little weight to these opinions.

*See* 20 C.F.R. § 404.1527(c)(2), (3), (4), (6); *see Cunningham v. Comm'r of Soc. Sec.*, 507 F.

App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type

of activities in which a claimant engages when assessing his or her residual functional capacity. .

. and was permitted to consider them to evaluate the credibility of [the claimant's] subjective

complaints of pain and other symptoms.") (citations omitted); *Smith v. Astrue*, 359 F. App'x 313,

316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion is contradicted

by several pieces of evidence in the record and also contains internal inconsistencies, it is not

entitled to the level of deference otherwise accorded to a treating physician's opinion");

*Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005) (holding that the ALJ did not err by

refusing to assign controlling weight to a treating physician's opinion that "was itself internally

inconsistent"); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL 413539, at *7 (D.N.J.

Jan. 31, 2019) ("The ALJ here reasonably discounted the opinion at issue upon a reasonable

reading of seemingly contradictory treatment notes."). Although Plaintiff complains that the ALJ

improperly discounted Dr. Salko's opinion as "too extreme" and Dr. Frisoli's opinion because it

was authored after the date on which Plaintiff was last insured for benefits, *Plaintiff's Moving

Brief*, ECF No. 24, p. 26, the Court concludes that the ALJ's evaluation of these opinions

conformed to governing standards and enjoys substantial support in the record.

Plaintiff complains that the ALJ improperly rejected opinions of disability expressed by

Plaintiff's "treating physicians at Whites Crossing Medical group and treating physicians [from]

Scranton Orthopedic Specialists[.]" *Plaintiff's Moving Brief*, ECF No. 24, pp. 26−27. The ALJ

considered these statements, but assigned them little weight, reasoning as follows:

> The record also contains general statements in the treatment records indicating the claimant is "disabled", "unable to perform any substantial work" and/or is "unable to work or engage in productive work" (Exhibits B1F [R. 273−337, reflecting records from Whites Crossing Medical Group, including Dr. Salko], B2F [R. 338 − 40, reflecting records from Scranton Orthopaedic Specialists, P.C., including treating physician Alan P. Gillick, M.D.], and B5F [R. 347−53, reflecting records from Scranton Orthopaedic Specialists, P.C., including Dr. Gillick]). These statements are given little weight because they are not consistent with the clinical findings on physical examination, when even provided, from the medical providers making these statements with detailed findings within normal limits during the relevant period discussed in detail above. In addition, these opinions are not consistent with the diagnostic evidence or the treatment history and they are not explained in any detail. *Further, these statements are from individuals not trained in evaluating work ability based on a specific functional assessment and opinions regarding the ultimate issue of disability are reserved to the Commissioner.*

R. 29−30 (emphasis added). To the extent that these opinions are mere conclusory opinions of

disability, the ALJ properly discounted the opinions because they relate to the ultimate issue

reserved exclusively to the Commissioner. *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114,

118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal

determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v.

Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to

give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion

related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.");

*Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 252 (3d Cir. 2006) ("The treating

professionals' opinions stated that Dixon was disabled and unable to do the specific jobs

identified by the vocational expert. Because the opinions reflected the treating professionals'

opinions on disability, they were properly afforded no special significance.") (citing 20 C.F.R. §

404.1527(e)(1) & (3)); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at

*5 (D.N.J. July 30, 2020) ("First, the ALJ properly gave no weight to Dr. Cohen's opinion that Dennis-Orshak 'could never return to full time work' because that is a determination reserved to the Commissioner.") (citations omitted). The ALJ's finding in this regard is sufficient to permit meaningful review and persuades this Court that substantial evidence supports the ALJ's evaluation of these conclusory opinions of disability. *See id.*

Plaintiff also contends that the ALJ improperly rejected these opinions on the basis that they were "from individuals not trained in evaluating work ability based on a specific functional assessment[.]" *Plaintiff's Moving Brief*, ECF No. 24, p. 27 (citing R. 30) (internal quotation marks omitted). Plaintiff's argument is not well taken. Reading the ALJ's opinion as a whole, *see Jones*, 364 F.3d at 505, the ALJ was specifically referring to only the physicians' conclusory opinions of disability when he stated they were not trained in evaluating work ability based on a specific functional assessment. R. 30. Notably, the ALJ evaluated Dr. Salko's treating source opinions earlier in the decision, R. 29, and that evaluation is supported by substantial evidence for the reasons already explained. In any event, the ALJ's statement in this regard amounts to, at most, harmless error because the ALJ's alternative bases for rejecting these conclusory opinions of disability are sufficient. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Louis*, 808 F. App'x at 118; *cf. Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

Finally, Plaintiff argues that the ALJ's rejection of all these treating opinions requires remand because the ALJ is left with no medical opinion–only his lay opinion–to support the RFC determination. *Plaintiff's Moving Brief*, ECF No. 24, pp. 27–34 (citing, *inter alia*, "Here,

19

the undersigned made an independent assessment of the claimant's residual functional capacity based on all of the medical and other evidence of record." R. 30). Plaintiff's argument is not well taken. It is the ALJ—not treating or examining physicians—who makes the ultimate disability and RFC determinations. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). Moreover, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006); *see also Chandler*, 667 F.3d at 362 (stating that an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision"); *cf. Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("[T]he United States Court of Appeals for the Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.") (collecting cases). In any event, the ALJ did not simply rely on his lay opinion in making the RFC determination in this case; instead, the ALJ detailed years of objective medical evidence and hearing testimony when determining Plaintiff's RFC, including, *inter alia*, 2012 MRIs of the thoracic and lumbar spine that reveal only mild to moderate findings with no evidence of compression of nerve root or of the spinal canal; conservative treatment; stable symptomology; negative straight leg-raise testing; normal and equal deep tendon reflexes in the lower extremities; full motor strength bilaterally and intact motor and sensory findings; normal motor and sensory findings; Plaintiff's daily activities, which included cutting a small lawn of grass with breaks, chores around the house in small increments, driving on occasion, aiding in the care of his sick live-in girlfriend; and no

evidence showing significant worsening of symptoms until 2015, which was years after the date on which he was last insured, with nothing in the evidence to relate this worsening to the relevant period in 2013. R. 26−29; *see also* R. 33 (reflecting list of exhibits considered by ALJ, including the opinion of the initial reviewing state agency physician), 148−49 (reflecting an opinion that Plaintiff was capable of light exertion and was not disabled).

In short, the Court concludes that the ALJ did not err when considering the treating opinions and that the RFC determination is consistent with the record evidence and enjoys substantial support in the record.

## V.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 9, 2021                           *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE

21